## CORN EXCHANGE BANK v. UNITED STATES.

District Court, S. D. New York.
July 13, 1931.

Laughlin, Gerard, Bowers & Halpin, of New York City (Miss Alice B. Baldridge, of New York City, of counsel), for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

WOOLSEY, District Judge.

I grant the plaintiff's motion in so far as it requests that the interest at 6 per cent. per annum on the agreed sum of $5,382.41, run from the 1st day of December, 1919, but I do not grant its motion that it be allowed the fees paid herein to the clerk as costs.

I. This action, filed July 7, 1925, was brought by the plaintiff for a recovery of an alleged overassessment of its 1918 income taxes made during the year 1924.

The case was tried in this court before Judge Grubb, and was dismissed on July 31, 1928. On plaintiff's appeal, the Circuit Court of Appeals reversed this judgment and ordered a new trial. Corn Exchange Bank v. United States, 37 F.(2d) 34. The mandate was dated January 22, 1930, and an appropriate order of this court was entered thereon February 17, 1930.

After negotiation, it has been finally agreed that judgment may be entered for the plaintiff herein without a new trial in the principal sum of $5,382.41, with interest.

The only matter now in dispute is the date from which that interest should run.

II. I think that the facts in this case differentiate it from any of the cases cited, or any others I have had the opportunity to find, in the available time to me. Briefly stated the situation is this:

On its 1917 tax return, the plaintiff fixed its taxes at $51,026.80.

On an office audit by the Income Tax Department of the plaintiff's income for 1917, an additional assessment was made against the plaintiff in the sum of $13,528.46, making a total tax of $64,555.46. This additional assessment was paid in invitum on December 1, 1919.

On subsequent refund claim the plaintiff's taxes for 1917 were finally fixed in 1924 at $52,524.65. Thus it was established that the additional assessment resulting from the office audit above mentioned was a wrongful overassessment in the sum of $12,030.81, being the difference between the tax of $64,555.46 as first assessed and the corrected assessment of $52,524.65.

The plaintiff, therefore, became entitled to a refund or a credit of $12,030.81, with such interest as the Revenue Act then in force provided in such circumstances.

Thereafter in 1924, this amount of $12,030.81 so due to the plaintiff taxpayer was adjusted as follows:

$3,306.75 was first refunded by check, and later $2,459.03 also. The balance of the $12,-030.81, however, namely, $6,265.03, was credited on March 29, 1924, to the plaintiff as payment of an additional assessment against its 1918 income taxes, which has now been held to have been erroneous to the extent of $5,382.40.

III. Passing from background details to their results we have, therefore, this situation:

On its 1917 income tax the plaintiff was overassessed the sum of $12,030.81, which it paid to the government on December 1, 1919, in invitum, as part of a larger sum.

On its 1918 income tax the plaintiff was overassessed, according to the opinion of the Circuit Court of Appeals herein, followed by the present agreement of the parties, in the sum of $5,382.41. This sum, as above noted, was paid by the credit allowed to the plaintiff on March 29, 1924.

Consequently, we have here as the ultimate facts:

1. An overassessment of the plaintiff's income taxes for 1917, amounting to $12,030.-81, paid on December 1, 1919.

2. The use on March 29, 1924, of part of that overassessment of 1917 as a credit to pay an overassessment on the plaintiff's 1918 income tax.

3. Thus, by two successive overassessments, the first admitted and the second now judicially found, the plaintiff has been wrongly kept out of its money since it paid its first overassessment on December 1, 1919.

IV. If the plaintiff had been guilty of an underpayment of his income tax, interest would have run against it from the due date of the taxes. Ford Motor Co. v. Dexter and Carpenter (D. C.) 51 F.(2d) 258, decided June 24, 1931, and the cases there cited.

On March 29, 1924, the government had confessedly been overpaid $12,030.81, and interest must have been payable thereon to the taxpayer at 6 per cent. per annum from December 1, 1919, unless there was a provision precluding such interest in the Revenue Act of 1921 (42 Stat. 227), then the governing statute in such matters.

"Interest" is the damages allowed for failure to pay money due or for the retention of money which should not be retained. The justice of the situation, therefore, requires that the interest on the principal sum of $5,382.41 should run from December 1, 1919, unless something has happened to suspend its running.

The second of the two overassessments by the government, both of which were justiciable wrongs to the taxpayer, cannot surely be allowed to stop the running of interest for the interval between the first overassessment and the payment by credit of the second overassessment.

Yet that is, in effect, the contention of the government.

Such an unjust result must find its sanction in a statute, if anywhere, and I do not find a statutory support for it.

■ V. On March 29, 1924, when the government credited the principal sum against the plaintiff's 1918 income taxes, the revenue statute in force was the act of 1921, which went into effect on its passage, November 23, 1921, 3:55 p. m. (see Revenue Act of 1921, § 1404, page 321), and remained in effect until the Revenue Act of 1924 went into effect on June 2, 1924 (43 Stat. 253).

Under the decisions of the United States Supreme Court, the statutory provision in force at the time of the allowance of refunds or credits determines how interest thereon should be computed. United States v. Boston Buick Co., 282 U. S. 476, 478, 51 S. Ct. 206, 75 L. Ed. 470; United States v. Magnolia Petroleum Co., 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509; Blair v. United States ex rel. Birkenstock, 271 U. S. 348, 46 S. Ct. 506, 70 L. Ed. 983.

Section 1324 of the Revenue Act of 1921 (42 Stat. 316) provides as follows:

"Sec. 1324. (a) That upon the allowance of a claim for the refund of or credit for internal revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund or credit at the rate of one-half of 1 per centum per month to the date of such allowance, as follows: (1) If such amount was paid under a specific protest setting forth in detail the basis of and reasons for such protest, from the time when such tax was paid, or (2) if such amount was not paid under protest but pursuant to an additional assessment, from the time such additional assessment was paid, or (3) if no protest was made and the tax was not paid pursuant to an additional assessment, from six months after the date of filing of such claim for refund or credit. The term 'additional assessment' as used in this section means a further assessment for a tax of the same character previously paid in part.

"(b) Section 177 of the Judicial Code is amended to read as follows:

" 'Sec. 177. No interest shall be allowed on any claim up to the time of the rendition of judgment by the Court of Claims, unless upon a contract expressly stipulating for the payment of interest, except that interest may be allowed in any judgment of any court rendered after the passage of the Revenue Act of 1921 against the United States for any internal-revenue tax erroneously or illegally assessed or collected, or for any penalty collected without authority or any sum which was excessive or in any manner wrongfully collected, under the internal-revenue laws.' "

It does not seem to me, therefore, that section 614 of the Revenue Act of 1928 (26 USCA § 2614 and note) would govern the question of interest on overpayments, as the plaintiff contends, but that that question would be governed by section 1324 of the act of 1921, as above quoted.

So far as section 615(c) of the Act of 1928 (28 USCA § 284) is concerned, dealing with interest on judgments, that covers all judgments entered after the effective date of the act of 1928, because it amends the Judicial Code.

Section 615(a) of the Revenue Act of 1928, however, does not differ from section 1324 (b) of the act of 1921 in any respect which would affect my decision that interest on the principal sum of $5,382.41 should run from December 1, 1919, the date of the payment of the first overassessment by the plaintiff.

VI. My attention is not called to any provision of the law allowing costs against the United States in actions of this kind, and, consequently, I deny the part of the plaintiff's motion requesting as costs the fees paid to the clerk.

VII. An order providing for judgment in the sum of $5,382.41, with interest at 6 per cent. per annum from the 1st day of December, 1919, may be submitted for signature on two days' notice of settlement.